Bird & Van Dyke, Inc.
A Professional Law Corporation
David S. Van Dyke, CSB 154402
Mary Ann F. Bird, CSB 206770
2111 W. March Lane
Suite B300
Stockton, CA 95207
Telephone      209.478.9950
Facsimile      209.478.9954
Attorneys for Defendant ANTHONY DON TRAN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| THE UNITED STATES OF AMERICA, | Case No.: 5:15-CR-00276 |
| Plaintiff, | |
| vs. | DEFENDANT'S SENTENCING MEMORANDUM |
| ANTHONY DON TRAN, | HONORABLE BETH L. FREEMAN |
| Defendant. | DATE: SEPTEMBER 22, 2015 |
| | TIME:  9:00 A.M. |

## MOTION FOR DOWNWARD DEPARTURE AND VARIANCE PURSUANT TO THE SENTENCING GUIDELINES AND 18 U.S.C. §3553(a)

Comes now the Defendant, Anthony Don Tran, who respectfully submits the following sentencing memorandum in support of his request for a downward departure or variance from the advisory sentencing guideline range based upon the following factors:

1.  §5K2.12    Defendant's deployment to a war zone and under the leadership of a corrupt command structure resulted in duress

2.  §3B1.2    Defendant's role in the fraudulent activity was minor as compared to his codefendants under separate indictment

3.  §5K2.20  Defendant's behavior resulting in the criminal activity was aberrant and induced, in part, by Post Traumatic Stress Disorder (PTSD).

4.  §5H1.3  Defendant's mental and emotional conditions resulted from his untreated PTSD

5.  §5H1.11  Defendant's military record was exemplary and decorated, despite his singular acts of corruption

Mr. Tran hereby submits the following discussion of the law and facts in support of his motion for downward departure or variance and incorporates by reference as if fully set forth herein: the Mitigation Report in Attachment 1 and the Presentence Report.

## Legal Discussion

Prior to the Supreme Court's decision in *United States v. Booker* (2005) 543 U.S. 220, a district court could depart from the sentence determined under the applicable sentencing guidelines only if the court found that there existed "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. §3553(b)(1)(2000 ed.). Section 3553(b)(1) was the statutory basis for the Sentencing Commission's guidelines and policies that similarly allowed departures only under exceptional circumstances of a kind, or to a degree, that had not adequately been taken into consideration by the Sentencing Commission. See USSG §5K2.0, comment. (n.2) ("This policy statement covers departures from the applicable guideline range based on offense characteristics or offender characteristics of a kind, or to a degree, not adequately taken into consideration in determining

BIRD & VAN DYKE, INC.
SENTENCING MEMORANDUM
PAGE: 2

the range."); *Booker* invalidated Section 3553(b)(1), which accordingly made the Sentencing Guidelines advisory rather mandatory.

The Supreme Court's decision in *Gall v. United States* (2007) 128 S.Ct. 586, 595, gave courts additional instruction about the imposition of a sentence outside the sentencing guidelines. The Court said extraordinary circumstances are not necessary to justify a sentence outside the guidelines range.

The Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2), which are "the need for the sentence imposed -

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to the criminal conduct;

(c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3552(a)(2).

In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)-(7).

In parity with the decisions in *Booker* and *Gall* and the invalidation of Section 3553(b)(1), the U.S. Sentencing Commission passed several amendments that caused changes to the Guidelines that reduce sentences of incarceration. (See Attachment 1: Mitigation Report, hereinafter referred to as "MR," ¶ 4). Thus, Defendant makes his motion for departure *and*

BIRD & VAN DYKE, INC.
SENTENCING MEMORANDUM
PAGE: 3

variance under 18 U.S.C. § 3553(a) and requests a sentence of credit for time served and

intensive supervised release because a sentence of credit for time served and intensive supervised

release is "sufficient, but not greater than necessary" to achieve the sentencing objectives of 18

U.S.C. § 3553(a) and will meet the ends of justice.

### Factor 1 - USSG §5K2.12:

### Duress through deployment to a war zone and a corrupt command structure

Former Army Specialist Anthony Don Tran was deployed twice to Afghanistan, in 2010-

2011 and 2012-2013. While there, he was exposed to IEDs (improvised explosive devices),

mortar and rocket attacks, and suicide bomber attacks. As a result of these daily traumas, he is

now diagnosed with Post Traumatic Stress Disorder (PTSD). (Presentence Report, hereinafter

referred to as 'PSR', ¶ 14, Item 60.)

During his second deployment and at the time of his own illegal conduct, Mr. Tran was

under the command of two corrupt non-commissioned officers (NCO), James Edward Norris and

Seneca Hampton. NCO Norris and NCO Hampton were prosecuted under separate indictment in

the Middle District of Georgia. In docket 4:15CR2001CDL, NCO Norris was sentenced to 51

months. In docket 4:14CR36001CDL, NCO Hampton was sentenced to 24 months. PSR 2:

Related Cases. Clearly and sadly, Mr. Tran was under a corrupt command structure.

The combination of his PTSD from the daily traumas of deployment to a war zone and

the rule of corrupt leadership placed Mr. Tran under unique duress conditions. Although not a

defense to the illegal conduct, this gives perspective to Mr. Tran's circumstances at the time he

made his poor choices. It is this perspective that Defendant wishes the Court to understand in his

request for a downward departure and variance.

BIRD & VAN DYKE, INC.
SENTENCING MEMORANDUM
PAGE: 4

## Factor 2 - USSG §3B1.2(b): Minor participant

As succinctly detailed by Deputy Probation Officer Insa Bel'Ochi in her justification for variance, the Defendant's conduct is dissimilar to his codefendants, Hampton and Norris. Defendant's conduct was accepting "hush" money from Hampton and Norris and selling JP8 fuel to Afghan locals. The total estimated loss to the Government based on the JP8 fuel amounts to $69,000 on a price per gallon basis. See Plea Agreement ¶ 4; item i. However, in comparison to the restitution orders for Hampton and Norris, that Court determined restitution only to be $176,100.00 despite multiple, daily acts of bribery where the actual loss to the Government neared $1,000,000.00. PSR ¶ 24; MR ¶ 6-7. This glaring difference shows that this Defendant clearly had a lesser role in the fraud against the Government. It is on this basis that the Defendant respectfully requests a two level decrease in the offense level and alternatively as a basis for a variance from the advisory guideline.

## Factor 3 - USSG §5K2.20: Aberrant behavior

The Defendant appears before this Court without any prior criminal convictions either as a juvenile or as an adult. Notably, in her thorough investigation of the Defendant's personal life, Officer Bel'Ochi clearly established Anthony's normal, daily behavior was not criminal or even disrespectful. Page 13, Item 58 of her report establishes Anthony as a family man devoted to his child, parents and siblings. More importantly, her argument for variance is implicitly based on factors that tested Anthony's mental strength. Sadly, it was the combination of PTSD and the failure of his marriage that prompted his illegal behavior. PSR ¶ 23-24. Of note, Anthony's illegal conduct lasted only a few weeks and limited to one illegal sale and the acceptance of "hush" money. MR ¶ 8-9.

**Factor 4 – USSG §5H1.3: Mental and emotional conditions stemming from PTSD**

Officer Bel'Ochi has provided to the Court a thorough, in-depth study of the Defendant's mental and emotional background. Beginning with Item 17 on Page 7 of the PSR, she details his 2015 psychological evaluation in which Anthony explains the firearm found in his car at the time of arrest by law enforcement. The reports indicate a struggle ensued when officers contacted the Defendant. Officers saw the firearm in his car console and accused him of reaching for this weapon. This has been consistently denied by Anthony. However, Anthony has expressed remorse for his actions, telling Officer Bel'Ochi that he accepts responsibility and regrets the pain he has put his family through. PSR ¶ 7, Item 17; ¶ 8, Item 22. To assist the Court in understanding his mental health, Officer Bel'Ochi included the psychological evaluation in its entirety. PSR ¶ 14-16, Item 60. Sadly, treatment for PTSD was slow and he was arrested before he could receive in-depth individual counseling. PSR ¶ 15; MR ¶ 9.


**Factor 5 – USSG §5H1.11:**

**Defendant honorably discharged with 14 awards and decorations**

Former Specialist Anthony Don Tran was an outstanding soldier despite his illicit conduct over a few short weeks. As detailed in the Mitigation Report, Anthony was an exemplary soldier and combatant. He is still supported by his fellow soldiers and commanders. Anthony had a distinguished career, with at least 14 awards demonstrating his dedication to the United States Military. MR ¶ 8.

///

///

///

BIRD & VAN DYKE, INC.
SENTENCING MEMORANDUM
PAGE: 6

## Conclusion

"While the fraud guideline focuses primarily on aggregate monetary loss and victimization, it fails to measure a host of other factors that may be important, and may be a basis for mitigating punishment in a particular case." [1] In this case, Probation has strongly and succinctly argued for a variance in support of Anthony Don Tran's factors in mitigation. Probation fully acknowledged and analyzed the factors in aggravation, primarily the firearm found in Anthony's car during his arrest. Defendant wishes to thank Probation for the hard work and supporting arguments for variance. Now, Defendant moves this Court to find his factors in mitigation outweigh the factors in aggravation and sentence him to credit for time served. He respectfully asks that he be placed on a period of intensive supervised release, with a specified requirement to attend and complete psychological counseling to treat his PTSD.

Mr. Anthony Don Tran engaged in provocative criminal conduct for which he has already paid a steep price. He has been continuously incarcerated since March 11, 2015, and separated from his minor child.  He is forever shamed by his criminal conduct, and unable to be with and care for his young daughter. The imposition of credit for time served and a three year period of intensive supervised release as a sentence adequately punishes Mr. Tran and will deter him from future criminality.

---

[1] Allan Ellis, John R. Steer, Mark Allenbaugh, At a "Loss" for Justice: Federal Sentencing for Economic Offenses, 25 Crim. Just. 34, 37 (2011); see also United States v. Ovid, slip op., 2010 WL 3940724, *1 (E.D.N.Y. Oct. 1, 2010)("[T]he fraud guideline, despite its excessive complexity, still does not account for many of the myriad factors that are properly considered in fashioning just sentences, and indeed no workable guideline could ever do so.").

BIRD & VAN DYKE, INC.
SENTENCING MEMORANDUM
PAGE: 7

1
2
3
4

      Therefore, in the interests of fundamental justice, Mr. Anthony Don Tran respectfully requests a sentence of time served for his violation of the law because time served is sufficient to meet the goals of rehabilitation, provide adequate deterrence and promote just punishment.

5
6
7

                                               Respectfully submitted,

8
9

Dated: September 9, 2015           ___/s/ Mary Ann F. Bird_____

10

                                      MARY ANN F. BIRD
                                      Attorney for Anthony Don Tran

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BIRD & VAN DYKE, INC.
SENTENCING MEMORANDUM
PAGE: 8

ATTACHMENT 1:

Mitigation Report



**ROBERT W. STOREY**
Criminal Sentencing & Investigations

Consultant/Investigator
License # 23766

**CRIMINAL SENTENCING & INVESTIGATIONS**
Office Address:
455 Capitol Mall, Suite 350
Sacramento, CA 95814

Mailing Address:
P.O. Box 1862
Shingle Springs, California 95682

Phone (916) 397-6721 | Fax (916) 441-6553

## *Resume*

**Education**:

Bachelor of Arts: Social Work, California State University, Sacramento
Masters of Arts: Administration of Justice, California State University, Sacramento

**Experience**:

*Consultant/Investigator* (January 2004 - Present)

* Consult and investigate for criminal and civil attorneys
* Investigate federal and state offenses for defense attorneys
* Prepare alternative presentence reports on federal guideline and state cases
* Analyze and prepare federal sentencing guidelines for defense attorneys
* Recipient of National Guideline Training intermittently from 1984 - Present
* Certified an expert in federal sentencing guidelines with the U.S. Attorney's Office

*United States Probation Officer* (November 1977 - January 2004)
Eastern District of California

* Supervisor of Court and Supervision Units
* Senior Sentencing Guideline Specialist
* Guideline Trainer to District Probation Officers
* Graduate of Leadership Development Program

*Administrator - Community Corrections Center* (June 1975 - November 1977)

* Provide programs for BOP inmates returning to the community
* Prepare reports for the Courts, Parole Commission and BOP on inmate behavior
* Monitor inmate activities in the residential facility and community
* Coordinate transition from CCC to community with U.S. Probation Officer
* Supervise and train staff employed by the CCC

*Parole Aide*
California Youth Authority (September 1973 - May 1975)

*Intelligence Analyst*
United States Air Force (July 1969 - May 1973)

**References** - Available Upon Request



**ROBERT W. STOREY**
Criminal Sentencing & Investigations

Consultant/Investigator
License # 23766

**CRIMINAL SENTENCING & INVESTIGATIONS**

| Office Address: | Mailing Address: |
|---|---|
| 455 Capitol Mall, Suite 350 | P.O. Box 1862 |
| Sacramento, CA 95814 | Shingle Springs, California 95682 |

Phone (916) 397-6721 | Fax (916) 441-6553

Honorable Beth Labson Freeman
United States District Judge
Northern District of California
San Jose, California

Re: Tran, Anthony Don
5:15CR00276-001 BLF

## Mitigation Report

Your Honor:

Before the Court for sentencing is Anthony Don TRAN, essentially a first time offender who was involved with co-defendants in violating Title 18 USC 201 (b)(2), Bribery of a Public Official. Although the entire scheme resulted in 600,000 gallons of fuel being sold to unauthorized Afghan truck drivers, Anthony was only responsible for 16,000 gallons. Anthony was subordinate to two noncommissioned officers who initially directed the theft of the fuel and subsequently influenced him to join. When Anthony initially found out what his leaders were doing, they bribed him with money for his silence. The loss associated with the entire illegal operation was $3,450,000 (600,000 gallons x $5.75 per gallon) of which Anthony was only responsible for $69,000 (12,000 gallons x $5.75 per gallon). Although not a defense, Anthony felt at the time what he was doing was condoned by his leaders and, as their subordinate, he was in a precarious position as to what to do. Therefore he remained silent and on one occasion sold gas he was not authorized to do.

The following information will hopefully assist the Court in becoming familiar with this rather unusual, dedicated and positive man.

**Personal, Family and Community Information:**

*(The Unite States Probation Officer in this matter, Insa Amina Bel'Ochi, appears to have captured the defendant's family history well in the Presentence Report. Rather than repeat her information this writer will highlight areas and add additional information received in separate interviews.)*

Anthony's oldest sister Christina indicated she was adopted in Viet Nam when she was a year old by Anthony's parents and brought to the United States with them. When she was about 15 years old she found out about her adoption which caused her some anguish. Anthony, although younger, was always a person she could confide in and helped her through these times. Later when he left Stockton because of peer pressures and problems, he came to live with her in Elk Grove, California and they both were better in that arrangement. (It is interesting to note that upon Anthony's leaving Stockton at age 15 to live with his sister, his juvenile justice contacts ceased.) She remains close to Anthony and said taking something that does not belong to him is out of character; that Anthony has always been good about following orders and she felt the Army would have been a good choice for him. She feels it was the Army leadership he was with at the time that caused him to make poor choices.

In speaking with Anthony's older brother, Davis, he told this writer that his brother's problems were, in his opinion, "because of the influence of those above him." That Anthony "will obey orders and follow expectations."

Anthony's girlfriend, Trinh Nguyen, is very supportive. She said they met while in school and had lost contact through the years. After his return to Stockton, they located each other, accidently, on social media. They became re-acquainted and began dating. She was shocked to hear of his arrest. She has been very loyal to Anthony and visits him weekly at the jail. They have plans to remain together and marry after his release.

Anthony has an excellent work ethic and history. The Presentence Report outlines his experiences. Additionally, upon his release, Anthony hopes to complete his college education and his father desire is that Anthony will take over the father's portion of Paul's Auto Body shop in San Jose, California. His father reports Anthony is an eager learning and with just two (2) years before he plans to retire,

Page 2

the father could teach Anthony what he lacks to be successful in taking the auto body shop. Anthony's mother owned and operated a hair salon for many years but has released her interest in that business and works part time. She hopes to eventually retire and join her husband in doing things together upon his relinquishing of the business to Anthony.

As the Court is aware, Anthony suffers from Posttraumatic Stress Disorder (PTSD) derived from his combat experience in Afghanistan while in the Army. It is interesting to note it took the Veteran's Administration over eight (8) months to get Anthony an appointment and he had just begun treatment before his arrest. Had he had treatment earlier, it would be an interesting question as to how he may have responded differently to the events leading up to his arrest. Nevertheless, the conclusion to the assessment conducted on Anthony in April, 2014 states, in part, "In other words, the extreme psychological disturbance of flashbacks resulting in violent enactments of war experiences is not present in this man, nor do I assess his PTSD as worsening in the direction of possible violent enactments in the future." So there appears to be optimism that with proper treatment Anthony's PTSD is controllable and any future difficulties would be manifest from within.

**Sentencing Guideline Factors**

When Congress passed the Sentencing Reform Act in 1984, it believed the sentencing options should be expanded to cut down on the incidents of unnecessary lengthy terms of incarceration. S. Rep. No. 225, 98th Cong., 1st Sess., 59 (1983). It noted:

> *Current law is not particularly flexible in providing the sentencing judge with a range of options from which to fashion an appropriate sentence. The result is that a term of imprisonment may be imposed in some cases in which it would not be imposed if a better alternative were available.*

There is a significant risk that in implementing the Guidelines, the Sentencing Commission erred on the side of over lengthy incarceration. Indeed, the Commission freely admits that in drafting the Guidelines it implemented sentences that are "significantly more severe than past practices" for "the most frequently sentenced offenses in federal courts." See U.S. Sentencing, *Fifteen*

Page 3

*Years of Guideline Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* at 43 (2004) ("*Fifteen Year Report*"), at p. 47.

On November 1, 2010, the U. S. Sentencing Commission passed several amendments that caused changes to the Guidelines that reduce sentences of incarceration, in keeping with its initial philosophy of 1984. Two such amendments relate to Chapter Five of the guidelines, which is the basic framework for determining an appropriate sentence. The Commission expanded the availability of alternatives to incarceration. Specifically, it expanded Zone B where probation is authorized, and extended Zone C, where at least half of the minimum term must be satisfied by imprisonment. The result is an expanded opportunity for Courts to assign sentences within Zones B or C, where probation or other alternatives to imprisonment are a possibility. This direction of assessing sentencing factors opens access to more lenient sentences. The Commission appears to be sending a message for the Courts to look at alternatives to incarceration, in keeping with its initial philosophy to "...cut down on the incidents of unnecessary lengthy terms of incarceration."

## Sentencing Considerations – 18 USC 3553

The Supreme Court in recent rulings found in Nelson v. United States, 129 S.CT. 890, reiterated the rule, articulated in *Rita* and *Gall* that "district judges, in considering how various statutory sentencing factors apply to an individual defendant, 'may not presume that the Guidelines range is reasonable.' Also, as this Court knows, in Booker v. United States, 125 S. Ct 738, the Supreme Court required severance of the Federal Sentencing Act's (Act) provisions making guidelines mandatory. Therefore the Courts may now sentence in ways less restrained than the past. So modified, the Act makes the Guidelines effectively advisory, requiring a sentencing court to consider Guidelines ranges but permitting it to tailor the sentence in light of other statutory concerns. After *Booker* the sentencing range called for by the Guidelines is but one factor among many relevant to the sentencing decision. *See 18 U.S. C. 3553 (a) (4).* Importantly Section 3553(a) creates no order of priority among listed factors; its plain language and structure indicate that each is to be treated equally and that each

Page 4

must be considered.  These factors are:

1- "The nature and circumstances of the offense and the history and characteristics of the offender,"
2- "The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner,"
3- "The kind of sentences available,"
4- "The kinds of sentence and sentencing range established by the Sentencing Commission in the Sentencing Guidelines,"
5- "Any pertinent policy statements issued by the Sentencing Commission,"
6- "The need to avoid unwarranted sentence disparities among similarly situated defendants,"
7- "The need to provide restitution."

When presented before the Court for punishment, the factors contained in 18:3553 (a) require the Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in that section. This defendant has certain factors, which the Court should take into consideration while contemplating an appropriate sentence. They are unique to Anthony and appear to land squarely in the factors reflected in 18:3353 (a) (1), "… the history and characteristics of the defendant." A sentence sufficient but not greater than necessary to address the sentencing factors set forth in 18U.S.C. 3553 (a) is needed in this case.

The following areas are recommended to the Court for consideration in sentencing this defendant. Anthony's uniqueness is reflected in these areas within the Guidelines and takes his case out of the "Heartland" as referenced in USSG 1A1 (4) (b).

www.saccsi.com  |  Email: rstorey@sbcglobal.net
Criminal Sentencing & Investigation | P.O. Box 1862 - Shingle Springs, California 95682

*(Although not contemplated in the Plea Agreement, it is respectfully recommended that the Court consider these <u>Factors That Warrant Departure</u> within the context of 18 USC 3553 while contemplating the final sentence in this matter.)*

*USSG 3B1.2 – <u>Mitigating Role</u>*

This Guideline section allows for an Offense Level reduction of 2 (minor participant), 3 (between minimal and minor participant) or 4 (minimal participant) depending on the lesser involvement of the defendant in the offense of conviction.

In the Commentary to USSG 3B1.2, Application 3, <u>Applicability of Adjustment,</u> (A) states "This section provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." The average participant has been defined by the Ninth Circuit in <u>U.S. v. Benitez</u>, 34 F. 3d 1489, 1498 (9th Cir. 1994) as looking only to the "average" participant in the case at hand.

Additionally, Application Note 4, <u>Minimal Participant</u>, states, in part, that it "…applies to a defendant…who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. It is intended that the downward adjustment for a minimal participant will be used infrequently."

It would appear from the facts of this case that Anthony's involvement stems from a combination of several factors, one of which was having those in direct authority over him influencing him to take bribes. While knowing and seeing what his co-defendants and leaders were doing, Anthony decided to do it one time also. Although he should have realized this error, he is depicted by friends and family as being "very trusting of people" and good at "following orders." Facts of the case indicate he was minimally involved. His "… lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others…" is certainly on point. He had no knowledge of the extent of the

www.saccsi.com  |  Email: rstorey@sbcglobal.net
Criminal Sentencing & Investigation | P.O. Box 1862 - Shingle Springs, California 95682

fraudulent activity as it pertained to his co-defendants and certainly not to the loss of over 600,000 gallons of fuel. Therefore, his role could be considered as at least minor.

*USSG 5H1.5 – Employment Record*

"Employment record is not ordinarily relevant in determining whether a departure is warranted." But it is not precluded and should not be considered in this case.

Anthony has been employed throughout most of his life. Starting in high school he worked with his father at the auto body shop, continued at Marriot Hotel, then Ford Motor Company before enlisting in the United States Army. After his discharge from the Army and while attending college he once again began to work for his father and uncle at the auto body shop. His employment activities do not show an elaborate life style. His work ethic has allowed him to be financially responsible, involved with his family, his community and attend school.

Case law in the 2nd, 5th and 8th Circuits which have allowed for departures based on a defendant's employment history.

U.S. v. Jagmohan, 909 F.2d 61 (2d Cir. 1990) the defendant had been gainfully employed for nine years since entering the country and he used a personal check in the bribery transaction, which reflected an utter lack of sophistication;

U.S. v. Harris, 293 F. 3d 863 (5th Cir. 2002) the district court could properly consider a police chief's "unblemished record" as a police officer in departing downward in a civil rights case;

U.S. v. Big Crow, 898 F.2d 1326 (8th Cir. 1990) defendants "excellent employment record" and his constant efforts to overcome the adverse environment of the Pine Ridge Reservation were proper basis for departure because they were of a magnitude not adequately taken into consideration by the guidelines.

www.saccsi.com | Email: rstorey@sbcglobal.net
Criminal Sentencing & Investigation | P.O. Box 1862 - Shingle Springs, California 95682

*USSG 5H1.11 – **Military**, Civic, Charitable, or Public Service: Employment-Related Contributions; Record of Prior Good Works*

"Military service may be relevant in determining whether a departure is warranted, if military service, individually or in combination with other offender characteristics, is present to an unusual degree, and distinguishes the case from typical cases covered by the guidelines." *See* U.S.S.G. chapter 5, pt. H,

Anthony was an outstanding solder and went above and beyond the normal duties required of his rank and assignment. He was awarded at least 14 awards and decorations, including The Army Commendation Medal, The Good Conduct Metal and Combat Badge, to name a few. Letters from those stationed with him, commanders and others show him to be a good soldier, dedicated to his assignment and a good, loyal person.  He has participating in assignments in combat zones on two (2) occasions and was involved in enemy combatant firefights. This young man has distinguished himself in his military endeavor and except for the behavior that brings him before the Court for sentencing, he was an exemplary solder and combatant.

*USSG 5K2.20 – Aberrant Behavior*

The qualifying requirements listed at 5K2.20 (b), state, "The court may depart downward under this policy statement only if the defendant committed a single criminal occurrence or single transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding lifestyle."

It appears the Commission intended that the phrases "single criminal occurrence" and "single criminal transaction" will be somewhat broader than "single act." For offense conduct to be considered for departure as "aberrant behavior", the conduct should have these characteristics and be "extraordinary". (See U.S. v. Guerrero, 333 F. 3d 1078 (9th Cir. 2003).)

Anthony's involvement appears to fit the criteria of aberrant behavior in that his planning was minimal and except for the consistent illegal behavior and subsequent encouragement by his of co-defendants and Army leaders, he would have probably never participated, based on his previous activities when deployed

www.saccsi.com  |  Email: rstorey@sbcglobal.net
Criminal Sentencing & Investigation  |  P.O. Box 1862 - Shingle Springs, California 95682

in Afghanistan. His involvement in this offense was on a limited basis with the duration only a few  weeks and his illegal sale of the fuel a one-time event. (*See United States v. Vieke, 348 F.3d 811 (9th Cir. 2003), where the Court held that fraud crime schemes ranging upwards of four years in duration still meet the limited duration test for aberrant behavior*).  After this one time action, there is no more involvement by Anthony and he stopped. Anthony's life has centered on working, staying in contact with family, serving his country and trying to make a better life for himself and his family. For Anthony to get involved in this activity was a significant deviation from his otherwise strong moral values and law-abiding lifestyle.

USSG 5H1.3 – <u>Mental and Emotional Conditions</u>

"Mental health and emotional conditions may be relevant in determining whether a defendant is warranted, if such conditions individually or in combination with other offender characteristics are present to an unusual degree, and distinguishes the case from typical cases covered by the guidelines."

As the Court is well aware, Anthony suffers from PTSD. He was not diagnosed at the time of the offense with this malady; although it is clear he suffered from it. He stated during his psychological evaluation referenced in the Presentence Report "He kept these symptoms to himself, stating that it was generally known to be unwise in the Army to express difficulties with PTSD symptoms for fear that such admission would target the individual as a damaged, unreliable solder." The report goes on to say Anthony did not want to go back to Afghanistan for his second tour and once again be in a combat zone. He was still suffering PTSD from his first tour but this time, began to self-medicate by using alcohol to excess.

Upon his return, and after eight (8) months, he finally started receiving treatment for this condition. But this was too late since a few weeks later he was arrested for this offense.

**Conclusion and Recommendation:**

When Anthony was deployed to Afghanistan the second time his wife admitted having an affair and this was a tremendous blow to him, according to family members. The Tran family has always taught strong family values, have been

www.saccsi.com | Email: rstorey@sbcglobal.net
Criminal Sentencing & Investigation | P.O. Box 1862 - Shingle Springs, California 95682

close knit and spiritual. The infidelity by his wife, coupled with corrupt leadership and undiagnosed PTSD brought him to a point in his life he had never been and weakened his moral compass. This seemed to have been a "perfect Storm" to Anthony's core values that weaken them, causing poor choices and behavior. In some ways it is amazing he reacted only in this way.

In considering the overall character of this defendant and his minimal involvement in the offense, there appears to be ample reasons to vary from the sentencing guidelines. He has now served over six (6) month is county jail which is "hard time", especially for someone who has never been incarcerated before.

Our assessment of this defendant indicates he was involved with this offense was due to many factors, many beyond Anthony's control. There is ample evidence to show that Anthony was a minor participant in a venture for which he was naïve, trusting and succumbed to the influences of others. These errors in judgment are not consistent with his otherwise law-abiding lifestyle but are unfortunately what brings him before the Court for sentencing.

In light of the above mentioned 3553 factors, his minimal involvement, outstanding employment historey, untreated mental health condition and aberrant behavior verified by contacts with, and letters from, concerned family members, friends and community members, a sentence of incarceration appears excessive in considering the totality of this case. It is respectfully recommended that a sentence that would allow Anthony to serve any custody in community corrections or home detention would be appropriate punishment for this defendant.

Respectfully submitted:

/s/

Robert W. Storey
Sentencing Consultant
Report prepared: August 27, 2015

www.saccsi.com  |  Email: rstorey@sbcglobal.net
Criminal Sentencing & Investigation | P.O. Box 1862 - Shingle Springs, California 95682